UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEPHEN McPARTLAND,

                    Plaintiff,

   -against-

MARK R. BASILE, MARY M. MARTI,
MARTI & BASILE, P.C., ALLAN L. PULLIN,
WEBER, PULLIN & CARBO, LLP, and
WEBER & PULLIN, LLP,

                    Defendants.
------------------------------------------------------------X

WEXLER, J.
LINDSAY, M.J.
_____ Civ. _____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

CV 02 6626

      Plaintiff Stephen McPartland, by his attorneys, Siller Wilk LLP, as and for his Complaint against defendants Mark R. Basile, Mary M. Marti, Marti & Basile, P.C., Allan L. Pullin, Weber, Pullin & Carbo, LLP, and Weber & Pullin, LLP and Demand for Jury Trial, alleges, upon personal knowledge and upon information and belief, as follows:

### Nature of Action

     1.    This is an action to recover money damages for legal malpractice and breach of contract. This action arises from the defendants' failure to prosecute plaintiff's disability claims against Home Insurance Company and UNUM Insurance Company of America. As a result of defendants' negligence, plaintiff's disability claims were dismissed. In addition, defendant Pullin and his firm overcharged plaintiff for attorneys' fees. Plaintiff now seeks to recover the damages which he would have recovered had the defendants properly prosecuted the underlying disability claims, the return of overcharged fees, together with prejudgment interest, costs and reasonable attorneys' fees.

### Jurisdiction and Venue

2. Jurisdiction is founded upon 28 U.S.C. § 1332 (a)(1) in that plaintiff and defendants are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1391(a)(2).

### Demand for Jury Trial

4. Plaintiff demands trial by jury of all issues triable by jury in this action pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### The Parties

5. Plaintiff Stephen McPartland ("McPartland") is a resident and citizen of the State of Florida.

6. Upon information and belief, defendant Mark R. Basile ("Basile") is and, at all times relevant to this action, was a citizen of the State of New York.

7. At all times relevant to this action, defendant Basile was an attorney admitted to practice in the State of New York.

8. Upon information and belief, defendant Mary M. Marti ("Marti") is and, at all times relevant to this action, was a citizen of the State of New York.

9. At all times relevant to this action, defendant Marti was an attorney admitted to practice in the State of New York.

10. Defendant Marti & Basile, P.C. is and, at all times relevant to this action, was a professional corporation engaged in the practice of law organized and existing under the laws of the State of New York.

11. At all times relevant to this action, defendant Basile was a partner in Marti & Basile, P.C.

12. At all times relevant to this action, defendant Basile was a shareholder in Marti & Basile, P.C.

13. At all times relevant to this action, defendant Basile was an attorney employed by Marti & Basile, P.C.

14. At all times relevant to this action, defendant Marti was a partner in Marti & Basile, P.C.

15. At all times relevant to this action, defendant Marti was a shareholder in Marti & Basile, P.C.

16. At all times relevant to this action, defendant Marti was an attorney employed by Marti & Basile, P.C.

17. Upon information and belief, defendant Allan L. Pullin ("Pullin") is and, at all times relevant to this action, was a citizen of the State of New York.

18. At all times relevant to this action, defendant Pullin was an attorney admitted to practice in the State of New York.

19. At all times relevant to this action, defendant Weber, Pullin & Carbo, LLP was a limited liability partnership organized and existing under the laws of the State of New York and engaged in the practice of law in the State of New York.

20. At all times relevant to this action, defendant Weber & Pullin, LLP was a limited liability partnership organized and existing under the laws of the State of New York and engaged in the practice of law in the State of New York.

21. Upon information and belief, defendant Weber & Pullin, LLP is the successor in interest of defendant Weber, Pullin & Carbo, LLP. Defendants Weber & Pullin, LLP and Weber, Pullin & Carbo, LLP shall be referred to herein, collectively, as the "Weber firm".

22. At all times relevant to this action, defendant Pullin was a partner in the Weber firm.

23. At all times relevant to this action, defendant Pullin was a shareholder in Weber firm.

24. At all times relevant to this action, defendant Pullin was an attorney employed by the Weber firm.

25. Upon information and belief, all of the defendants are citizens of states other than Florida.

## The Accident

26. On and prior to July 6, 1989, plaintiff was employed by Fulbright and Jaworski, LLP (formerly known as Fulbright, Jaworski, Reavis and McGrath) as a legal proofreader.

27. On July 6, 1989, plaintiff was severely injured while performing his employment duties at Fulbright & Jaworski, LLP.

28. Among other things, plaintiff suffered two ruptured lumbar vertebrae. Despite surgery and intensive medical treatment, plaintiff's condition did not improve.

29. As a result of the injuries sustained in the July 6, 1989 accident, plaintiff was permanently disabled and has been unable to work since that time.

## The Home Disability Claim

30. Effective April 27, 1989, plaintiff was covered under a disability insurance policy, purchased by plaintiff's employer, Fulbright & Jaworski LLP and issued by the Home Insurance Company ("Home") under policy number GT-12665 (the "Home Policy"). The Home Policy provided coverage for plaintiff for any loss occasioned by total disability. The Home Policy was in effect at the time of plaintiff's accident.

31. On July 7, 1989, plaintiff notified Home, through its agent and Plan Administrator, Fulbright & Jaworski, LLP, of his accident and said notice complied in all respects with the Home Policy's requirements.

32. Plaintiff filed a notice of claim and a sworn proof of loss with the plan administrator that complied in all respects with the Home Policy requirements. The proof of loss set forth in detail the nature and extent of plaintiff's injuries and the amount claimed thereon.

33. Following submission of the notice of claim and proof of loss to Home by its agent, Fulbright & Jaworski LLP, plaintiff attempted to contact Home concerning payment of the claim. These attempts extended over a twelve (12) month period. Home refused to negotiate in good faith.

34. Plaintiff attempted to negotiate with Home and contacted Home's director-health care, Michael Van Riper, who refused to accept plaintiff's proof of loss and who referred plaintiff to Home's claims representative.

35. Home consistently refused to consider the nature and extent of plaintiff's loss and specifically rejected the opportunity to properly evaluate plaintiff's proof of loss.

5

36. Home's issuance of the Home Policy of disability insurance created a contractual relationship between Home and plaintiff. Home therefore was subject to the implied-in-law duty to act fairly and in good faith in order not to deprive plaintiff of the benefits of the Home Policy.

37. Home acted willfully, fraudulently, intentionally, and in bad faith in refusing to effectively consider the nature and extent of plaintiff's loss and in rejecting plaintiff's proof of loss. This was done knowingly, intentionally, and with the purpose of discouraging, avoiding, or reducing the payment due to plaintiff under the terms of the Home Policy.

38. Home had no legitimate or arguable reason for refusing to pay plaintiff's valid claim. By refusing to consider the nature and extent of plaintiff's loss and by rejecting the opportunity to consider and evaluate plaintiff's proof of loss, Home intentionally failed to determine whether there was any legitimate or arguable reason for refusing to pay plaintiff's claim.

39. Home's intentional refusal to pay plaintiff's valid claim constituted a breach of contract and was a breach of the implied-in-law duty of good faith and fair dealing and operated to unreasonably deprive plaintiff of the benefits of the Home Policy.

40. Home's conduct in intentionally refusing to pay plaintiff's valid claim was malicious, fraudulent, oppressive, and otherwise reflected a conscious disregard of plaintiff's rights.

41. As a proximate result of Home's intentional refusal to pay plaintiff's valid claim, and Home's consequent breach of the implied-in-law duty of good faith and fair dealing, plaintiff had to borrow over Forty Thousand ($40,000.00) Dollars to pay for medical services and plaintiff

6

had to borrow Twenty Thousand ($20,000.00) Dollars to pay for living expenses during the period he was deprived of the ability to work, which continues.

### The UNUM Disability Claim

42. On and prior to July 6, 1989, plaintiff was insured under a policy of insurance issued by UNUM Life Insurance Company of America ("UNUM") which provided long term disability coverage to plaintiff in the event of disability (the "UNUM Policy"). The UNUM Policy was in effect at the time of the July 6, 1989 accident.

43. At all times hereinafter mentioned, plaintiff was insured under the UNUM Policy and plaintiff had an insurable interest therein.

44. On or about July 6, 1989, and during the period within which the UNUM Policy was in full force and effect, plaintiff was injured at his place of employment causing severe injuries to plaintiff's back rendering plaintiff completely disabled.

45. Plaintiff complied with all requirements under the UNUM Policy.

46. UNUM failed to perform all of its duties under the UNUM Policy.

47. UNUM initially determined that, due the injuries sustained by plaintiff on July 6, 1989, plaintiff was disabled in accordance with the terms of the UNUM Policy and was eligible to receive benefits thereunder, commencing on or about January 3, 1990.

48. Plaintiff received benefits under the UNUM Policy from UNUM commencing on or about January 3, 1990 and continuing to September 4, 1996.

49. During this period, however, UNUM underpaid plaintiff and failed to pay plaintiff the full benefits due plaintiff under the UNUM Policy.

50. Plaintiff complied with all of the requests made by UNUM for medical and all other relevant information.

51. UNUM wrongfully, intentionally and willfully breached the terms of the UNUM Policy by not paying plaintiff the full amount due under the UNUM Policy before September 4, 1996 and by failing to make payments to plaintiff, without explanation, since on or about September 4, 1996.

### Retainer of Basile

52. On or about July 18, 1995, plaintiff retained defendants Basile and Marti & Basile, P.C. to represent him in connection with his claims under the Home Policy.

53. At that time, defendant Basile stated to plaintiff that he had experience in matters such as the claims to be asserted under the Home Policy.

54. Plaintiff paid defendant Marti & Basile, P.C. an initial retainer of $10,000 toward legal fees. Plaintiff made additional payments to Marti & Basile, P.C. thereafter.

55. Defendants Basile and Marti & Basile, P.C. agreed to represent plaintiff in connection with his claims under the Home Policy and, later, in connection with his claims under the UNUM Policy.

56. Defendant Basile was the attorney at Marti & Basile, P.C. responsible for handling plaintiff's claims under the Home Policy, and, later, in connection with his claims under the UNUM Policy.

## Failure to Prosecute the Home Action

57. On or about September 5, 1995, Marti & Basile, P.C. commenced a lawsuit on behalf of plaintiff against Fulbright & Jaworski, LLP and Home in Supreme Court, Kings County under Index No. 28801/95 (the "Home Action").

58. The complaint filed by Marti & Basile, P.C. in the Home Action asserted claims against Home for breach of contract and bad faith.

59. The claims asserted in the Home Action were meritorious and plaintiff would have prevailed on these claims had the defendant attorneys prosecuted the case properly.

60. Defendant Basile and his firm, however, failed to prosecute the Home Action diligently.

61. On or about March 2, 1999, the Home Action was marked "disposed" for lack of prosecution and "marked off" the calendar.

62. Under CPLR Rule 3404, the case was automatically dismissed one year later on or about March 2, 2000.

63. The Home Action was marked off the calendar because defendants Basile and Marti & Basile, P.C. failed to diligently prosecute the case.

## Retainer of Pullin

64. On or about June 19, 2000, plaintiff terminated defendant Basile and his firm as his attorneys and retained defendant Weber, Pullin & Carbo, LLP to represent him in the Home Action.

65. At that time, defendant Pullin stated to plaintiff that he had experience in matters such as the claims to be asserted under the Home Policy.

66. Defendant Pullin was the attorney at the Weber firm responsible for handling plaintiff's claims under the Home Policy.

67. On or about June 19, 2000, plaintiff signed a retainer agreement with defendant Pullin and the Weber firm under which the Weber firm agreed to represent plaintiff in the Home Action on a 1/3 contingency basis.

68. Over a period of time, defendant Basile and his firm transferred approximately $17,000.00 previously paid by plaintiff to the Weber firm which was to be credited by the Weber firm to plaintiff against the one-third contingency fee to be paid to the Weber firm in the event of a recovery by plaintiff in connection with the Home Action.

### The Motion to Restore

69. On or about April 23, 2001, the Weber firm filed a motion to restore the Home Action to the active calendar.

70. In support of the motion, the Weber firm submitted an affidavit from plaintiff.

71. The Weber firm, however, did not submit any affidavit from defendant Basile to explain why the litigation of the Home Action had been delayed.

72. On or about May 21, 2001, the court denied the motion to restore.

73. On or about July 27, 2001, the Weber firm filed a motion to renew and/or reargue the motion to vacate.

74. This time, the Weber firm obtained an affidavit from defendant Basile explaining the reasons for the delay in prosecuting the Home Action.

75. After the motion to reargue was submitted, but before it was decided, Home offered plaintiff $50,000 to settle the claims asserted in the Home Action.

76. Defendant Pullin advised plaintiff he should take the settlement.

77. Plaintiff agreed to accept the $50,000 settlement in the Home Action.

78. Plaintiff was compelled to accept the settlement in the Home Action because of the negligence of the defendant attorneys.

**First Cause of Action**
(Legal Malpractice – Home Disability Claim)

79. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 79 as though fully set forth herein.

80. By agreeing to represent plaintiff in connection with his claims under the Home Policy, defendants had a duty to do so competently and in accordance with the generally accepted standards of the legal profession as existed in the State of New York.

81. Defendants Basile, Marti, and Marti & Basile, P.C. acted negligently under the circumstances, and failed to provide adequate legal services in accordance with the generally accepted standards of the legal profession as existed in the State of New York by, among other things, allowing the Home Action to be "marked off" the calendar; failing to prosecute the Home Action diligently on plaintiff's behalf; neglecting the Home Action; failing to research and know the applicable law; failing to communicate with plaintiff; failing to conduct discovery; failing to investigate plaintiff's claims; and failing to gather and submit evidence on the motion to restore which would have established that plaintiff had a meritorious cause of action, that plaintiff had no intent to abandon his claim, that there was a reasonable excuse for the delay, and that there was no prejudice to the defendants in the Home Action.

82. Defendants Pullin and the Weber firm acted negligently under the circumstances, and failed to provide adequate legal services in accordance with the generally accepted standards

11

of the legal profession as existed in the State of New York by, among other things, failing to submit evidence and make arguments which would have carried the motion to restore; failing to obtain and submit an affidavit from defendant Basile on the motion to restore; failing to research and know the applicable law; failing to gather and submit evidence on the motion to restore which would have established that plaintiff had a meritorious cause of action, that plaintiff had no intent to abandon his claim, that there was a reasonable excuse for the delay, and that there was no prejudice to the defendants in the Home Action; failing to communicate with plaintiff; failing to conduct discovery; failing to investigate plaintiff's claims; and failing to advise plaintiff properly.

83. Plaintiff would have prevailed on his claims in the Home Action against the defendants therein and would have recovered money damages for the severe and permanent injuries plaintiff sustained in the accident but for the negligence of the defendants.

84. By reason of the foregoing, plaintiff has been damaged because of the negligence of the defendants in an amount to be determined at trial but in no event less than $2 million dollars.

<b><u>Second Cause of Action</u></b><br>(Legal Malpractice – UNUM Disability Claim)

85. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 84 as though fully set forth herein.

86. Between January, 1990 and September, 1996, UNUM failed to pay plaintiff all of the benefits to which plaintiff was entitled under the UNUM Policy.

87. In September, 1996, UNUM ceased making payments to plaintiff to which he was entitled under the UNUM Policy.

88. Plaintiff thereafter retained defendant Basile and his firm to prosecute claims against UNUM based on its failure to honor its obligations under the UNUM Policy.

89. In July, 1998, defendant Basile and his firm prepared a draft complaint for plaintiff's claims arising from the UNUM Policy.

90. Defendants Basile and Marti & Basile, P.C., however, never commenced suit against UNUM.

91. Plaintiff's claims under the UNUM Policy were subject to a contractual Statute of Limitations of three years.

92. The time for bringing suit for claims based on UNUM's breach of the UNUM Policy expired during the time that defendants Basile and Marti & Basile, P.C. were attorneys for plaintiff and before any such suit was commenced.

93. Plaintiff would have prevailed on his claims under the UNUM Policy but for the negligence of defendants Basile and Marti & Basile, P.C.

94. By agreeing to represent plaintiff in connection with his claims under the UNUM Policy, defendants Basile, Marti, and Marti & Basile, P.C. had a duty to do so competently and in accordance with the generally accepted standards of the legal profession as existed in the State of New York.

95. Defendants Basile, Marti, and Marti & Basile, P.C. acted negligently under the circumstances, and failed to provide adequate legal services in accordance with the generally accepted standards of the legal profession as existed in the State of New York by, among other things, failing to prosecute the UNUM claims on plaintiff's behalf; neglecting the UNUM claims; failing to commence suit on the UNUM claims prior to the expiration of the applicable Statute of

Limitations; failing to research and know the applicable law; failing to communicate with plaintiff; failing to conduct discovery; failing to investigate plaintiff's claims; and failing to advise plaintiff properly.

96. Plaintiff would have prevailed on his claims under the UNUM Policy and would have recovered money damages for the severe and permanent injuries plaintiff sustained in the accident but for the negligence of the defendants.

97. By reason of the foregoing, plaintiff has been damaged because of the negligence of the defendants Basile and Marti & Basile, P.C. in an amount to be determined at trial but in no event less than $2 million dollars.

### Third Cause of Action
(Breach of Contract)

98. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 97 above as though fully set forth herein.

99. Defendants Pullin and the Weber firm agreed to provide legal services to the plaintiff in connection with his claims under the Home Policy.

100. By virtue of their implied and/or express agreement with the plaintiff, defendants Pullin and the Weber firm entered into a contract with plaintiff to render legal services.

101. Under the terms of plaintiff's retainer with the Weber firm, the Weber firm agreed to give plaintiff credit for approximately $17,000.00 paid to defendant Basile by plaintiff.

102. Upon the settlement of the Home Action, the Weber firm paid itself one third of the recovery as a fee but did not give plaintiff a credit for the $17,000 previously paid to the Weber firm as required by the retainer agreement between plaintiff and the Weber firm.

103. Defendants Pullin and the Weber firm breached the contract to provide legal services to plaintiff by, among other things, not giving plaintiff a credit for the $17,000 previously paid to defendant Basile and his firm as required by the retainer.

104. As a result of the defendants' breaches, plaintiff has been damaged in an amount to be determined at trial but in no event less than $17,000.00.

**WHEREFORE**, plaintiff Stephen McPartland demands judgment against the defendants, as follows:

1. On the First Cause of Action, against each and every defendant, jointly and severally, in the amount of $2,000,000 together with prejudgment interest, at the legal rate, from July 6, 1989 until the date of judgment herein; and

2. On the Second Cause of Action, against defendants Mark R. Basile, Mary M. Marti, and Marti & Basile, P.C. in the amount of $2,000,000 together with prejudgment interest, at the legal rate, from July 6, 1989 until the date of judgment herein; and

3. On the Third Cause of Action, money damages against defendant Allen L. Pullin Weber, Pullin & Carbo, LLP, and Weber & Pullin, LLP in the amount of $17,000.00 together with prejudgment interest, at the legal rate, from November 5, 2001 until the date of judgment herein; and

4. Attorneys' fees, costs and disbursements of this action, and

5. Such other further and different relief as the Court deems just and proper.

Dated: New York, New York
       December 5, 2002

                                    SILLER WILK LLP
                                    *Attorneys for Plaintiff*

                            By:     *[signature]*
                                    Matthew F. Schwartz (MS 9843)
                                    675 Third Avenue - 9th Floor
                                    New York, New York 10017
                                    Telephone: (212) 421-2233